IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FRANKENMUTH MUTUAL          )
INSURANCE COMPANY,          )
                            )
        Plaintiff,          )
                            )
    v.                      )    CIVIL CASE NO. 2:20-cv-576-ECM
                            )              [WO]
BROWN'S CLEARING, INC., *et al.*,  )
                            )
        Defendants.         )

## MEMORANDUM OPINION and ORDER

### I.  INTRODUCTION

Now pending before the Court are Defendants Brown's Clearing, Inc. ("Brown's Clearing"), Courtney Ford, and Breon Ford's (collectively "Defendants") motion for summary judgment (doc. 26) and Plaintiff Frankenmuth Mutual Insurance Company's ("Frankenmuth") motion for summary judgment (doc. 52).

The Plaintiff filed a Complaint for Declaratory Judgment on August 7, 2020, seeking declarations that: (1) it owes no duty to defend or indemnify Brown's Clearing with respects to claims filed against Brown's Clearing by the Fords in the State Court of Cobb County, Georgia ("the underlying action") (Count I); and (2) economic damages are not covered by the applicable insurance policy (Count II).

The Defendants' motion for summary judgment asserts that Brown's Clearing is entitled to coverage for the underlying action and that economic loss is covered by the policy.  In its response in opposition to summary judgment, the Plaintiff states that it is

neither "seeking nor opposing a finding that in this case economic damages qualify as damages under the policy." (Doc. 56 at 9, n.4).  Further, the Plaintiff moved for summary judgment on Count I only.

Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the Defendants' motion for summary judgment is due to be GRANTED, and the Plaintiff's motion for summary judgment is due to be DENIED.

## II.  JURISDICTION

The citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 1).  Therefore, the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested.

## III.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-*

2

*Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c).  The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper*, 906 F.3d at 1311.  The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252.  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.*   However, "mere conclusions and

3

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

Cross-motions for summary judgment do not affect the applicable Rule 56 standard. *See, e.g.*, *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005); *Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233–34 (11th Cir. 2001). "Cross-motions . . . will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (citation omitted). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Muzzy Prods., Corp. v. Sullivan Indus., Inc.*, 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002) (citation omitted).

## IV. FACTS

### A. The Policy

Brown's Clearing is a land-clearing business owned by Kelley and Steven Brown. Frankenmuth issued a Commercial Policy to Brown's Clearing, effective from March 13, 2017, through March 13, 2018 (the "Policy"). (Doc. 1-2).  In February 2018, the Policy was renewed for the term March 13, 2018, through March 13, 2019. (*Id.* at 97–98).  The Policy provided general liability coverage and additional umbrella coverage. (*Id.* at 25, 57). Section I, Coverage A of the Policy, entitled "Bodily Injury and Property Damage Liability," provides that Frankenmuth "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

4

which this insurance applies," and that Frankenmuth "will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.* at 14).  Under Section IV of the Commercial General Liability Coverage entitled "Conditions," the Policy states in relevant part:

> 2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
>
> > (1) How, when and where the "occurrence" or offense took place;
> >
> > (2) The names and addresses of any injured persons and witnesses; and
> >
> > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
> > (1) Immediately record the specifics of the claim or "suit" and the date received; and
> >
> > (2) Notify us as soon as practicable.
> >
> > You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>
> > (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

(*Id.* at 25).  The Commercial Liability Plus endorsement "modifies insurance provided under" the Commercial General Liability Coverage. (*Id.* at 47).  The endorsement states in relevant part:

4. **Duties in the Event of Occurrence, Claim or Suit**

   a. The requirement in condition 2.a. that you must see to it that we receive notice of an "occurrence" applies only when an "occurrence" is known to:

     (1) You, if you are an individual;

     (2) A partner, if you are a partnership; or

     (3) An executive officer or insurance manager, if you are a corporation.

   b. The requirement in condition 2.b. that you must see to it that we receive notice of a claim or "suit" will not be considered breached unless the breach occurs after such claim or "suit" is known to:

     (1) You, if you are an individual;

     (2) A partner, if you are a partnership; or

     (3) An executive officer or insurance manager, if you are a corporation.

(*Id.* at 48).  The Policy defines "occurrence" to mean "an accident." (*Id.* at 29).  Further, the Policy defines "executive officer" to mean "a person holding any of the officer positions crated by your charter, constitution, by-laws or other similar governing document." (*Id.* at 27).

The Commercial Liability Umbrella Coverage states that Frankenmuth will "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.* at 57).  Under Section IV of the Umbrella Liability Coverage entitled "Conditions," the insured must notify Frankenmuth "as soon as practicable of an 'occurrence' or an offense, regardless of the amount, which may result in a claim." (*Id.* at 69).  The Policy further provides that "if

a claim is made or 'suit' is brought against any insured, you must: . . . (2) notify [Frankenmuth] as soon as practicable." (*Id.*).

## B. Underlying Action and Coverage Dispute

On July 20, 2018, Courtney Ford was travelling on Interstate 75 in Bartow County, Georgia.  At the same time, tree-cutting services were being performed along Interstate 75 where Mrs. Ford was driving.  Without warning, a cut tree limb flew through the air and pierced the windshield of Mrs. Ford's car.  As a result, Mrs. Ford suffered severe injuries to her left wrist and arm which resulted in pain and suffering, lost earnings, and other damages.[1]

On the day of Mrs. Ford's accident, S&S Diesel was performing tree-cutting work along the portion of Interstate 75 where Mrs. Ford was injured.  Brown's Clearing had hired S&S Diesel as a subcontractor to perform tree-cutting work along Interstate 75.  On the day of the accident, Brown's Clearing did not have any employees working on the tree

---

[1] Frankenmuth disputes these facts on the grounds that they are taken from the complaint in the underlying action and thus constitute inadmissible hearsay.  The Court construes Frankenmuth's "dispute" as an objection under Rule 56(c)(2), which provides: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  A statement is hearsay if the party offers it in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  However, these facts are not offered to prove the truth of the matters asserted, i.e., that Mrs. Ford was injured by a tree limb that pierced the windshield of her car.  Rather, the facts are offered to show that there is a claim against the Defendants based on facts alleged in the complaint in the underlying action.  Thus, the Court is not persuaded that the facts taken from the complaint constitute hearsay.

To the extent that they are offered to prove the truth of the matter asserted, Frankenmuth has not demonstrated that the material cited "cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).  Indeed, it appears that Mrs. Ford could testify about what happened that day, and her testimony would be admissible evidence.  Accordingly, because the material cited is not hearsay, or alternatively because the material could be presented in a form that would be admissible in evidence, Frankenmuth's objection is overruled.

cutting project on Interstate 75.  No one from S&S Diesel ever told anyone from Brown's Clearing that an accident had occurred.[2]

On January 24, 2019, the Fords sued Gunnison Tree Specialists, Inc. ("Gunnison") and Georgia Power in the State Court of Cobb County, Georgia, No. 19-A-292.  The Fords alleged that Gunnison and Georgia Power negligently caused the tree limb to pierce Mrs. Ford's windshield, resulting in her injuries.  Mr. Ford also brought a claim for loss of consortium.

On February 11, 2019, Andrew Horowitz, an attorney representing Gunnison and Georgia Power, emailed Kelley Brown about a "request for documents." (Doc. 37 at 5). The next day, Horowitz emailed Mrs. Brown explaining that he was defending Gunnison and Georgia Power "in a suit filed by a motorist who claims that she was injured on 7/20/18." (*Id.*).  Horowitz's email further states:

> I understand that Brown's Clearing had a tree crew alongside I-75 North that day, doing work for GDOT around Mile Marker 294.  I wanted to give someone at Brown's Clearing a heads-up that I was about to serve a records request on your company's GA registered agent.  The request generally seeks docs relating to Brown's Clearing's work in that area between 7/18 and 7/20/18.

---

[2] Frankenmuth disputes the facts in the first, third, and fourth sentences of this paragraph, asserting that "[a]s a subcontractor S&S Diesel was working on behalf of Brown's Clearing."  Frankenmuth's supporting evidence is Kelley Brown's testimony that Brown's Clearing hired a subcontractor called S&S Diesel out of Alabama.

Rule 56(e) provides: "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  The evidence cited by Frankenmuth does not refute Kelley Brown's testimony that S&S Diesel was working on the project, that Brown's Clearing did not have any employees on Interstate 75 that day, or that no one from S&S Diesel told Brown's Clearing that an accident had occurred.  Thus, the Court finds that Frankenmuth has failed to properly address the Defendants' assertions of fact as required by Rule 56(c), and the Court considers the facts undisputed for purposes of the motion.

(*Id.*).  Mrs. Brown responded in relevant part: "I think we had one piece of equipment there in July; I can pull the daily logs if that's what you need." (*Id.* at 4).  Mrs. Brown emailed the logs to Horowitz on February 15, 2019. (*Id.* at 2–3, 6–7).  Between February 12, 2019, and February 15, 2019, both before and after Mrs. Brown sent the logs, Horowitz and Mrs. Brown exchanged additional emails. (*Id.* at 2–5).  Mrs. Brown testified that she thought Horowitz was seeking a potential witness. (Doc. 33 at 16, 53:9-10).

Frankenmuth asserts that on February 13, 2019, Brown's Clearing requested and received a Certificate of Liability Insurance for its subcontractor, S&S Diesel.  Brown's Clearing contends that it requested the Certificate on July 26, 2019.  Brown's Clearing further contends that the February 13, 2019 date on the Certificate indicates when the insurance policy was renewed, not when Brown's Clearing requested it.

On May 10, 2019, after conducting discovery, the Fords filed an Amended Complaint in the underlying action adding Brown's Clearing as a defendant.  On May 16, 2019, a process server attempted to serve the summons and amended complaint on Brown's Clearing's registered agent in Georgia.  Between May 16, 2019, and May 21, 2019, Brown's Clearing's registered agent sent four emails to Kelley Brown's email address stating that Brown's Clearing had received a "Delivered Service of Process document" and explaining how Brown's Clearing could log onto its online account to view the document. However, Mrs. Brown testified that she did not open those emails because she thought they were about invoices and that, in 2019, she did not know what the phrase "service of process" meant.  She further testified that neither she, Mr. Brown, nor Brown's Clearing had ever been sued before, and that she did not understand the role of a registered agent;

9

she only knew that Brown's Clearing was required to have a registered agent in Georgia in order to do business there.  As explained below, the Georgia state court later found that the service on the registered agent was "without effect."

After Brown's Clearing did not respond to the state court complaint, the Fords filed a motion for default judgment.  On July 19, 2019, Horowitz emailed Mrs. Brown stating that the Fords had filed a motion for default judgment against Brown's Clearing in the underlying action.  Mrs. Brown testified in her deposition that this email was the first notice she received of the underlying action. (Doc. 33 at 19; 62:16–20).  The Georgia state court denied the motion for default judgment, finding that service was "without effect" because the process server had not been properly appointed under Georgia law. (Doc. 35 at 2).

On July 26, 2019, Mrs. Brown reported a claim to Frankenmuth regarding the underlying action and notified Frankenmuth that the Fords were seeking a default judgment against Brown's Clearing.[3]  Mrs. Brown testified that she filed the claim online. (Doc. 33 at 18, 58:13–16; 19, 62:6–7).  Frankenmuth asserts, however, that Brown's Clearing never provided written notice as required by the Policy.  Frankenmuth's evidence in support of this assertion is the Affidavit of Randy Eichhorn. (Doc. 54-7).  Mr. Eichhorn, a "claim senior litigation examiner" with Frankenmuth, asserts in relevant part that, on July 26, 2019, Mrs. Brown reported a claim to Frankenmuth regarding the underlying action. (*Id.* at 2, para. 3).

---

[3] Mrs. Brown testified she filed the claim "five or six days" after July 19, 2019, (doc. 33 at 18, 58:14), but she did not "remember what date that [she] turned the claim in," (*id.* at 19, 63:4-5).  Frankenmuth submitted an affidavit that the claim was reported on July 26, 2019. (Doc. 54-7 at 2, para. 3).  The Defendants do not dispute the July 26, 2019 date.

After Mrs. Brown reported the claim, Frankenmuth began defending Brown's Clearing in the underlying action under a full reservation of rights.

## V. DISCUSSION

As noted earlier, the Defendants' motion for summary judgment asserts that Brown's Clearing is entitled to coverage for the underlying action (Count I) and that economic damages are covered by the Policy (Count II). In its response, the Plaintiff states that it is neither "seeking nor opposing a finding that in this case economic damages qualify as damages under the policy." (Doc. 56 at 9, n.4). Additionally, the Plaintiff moves for summary judgment only on Count I. The Court will first address the parties' respective requests for summary judgment on Count I of the Plaintiff's Complaint.

### A. Count I

The Defendants contend that Brown's Clearing complied with the prerequisites for general liability and umbrella coverage under the Policy, and therefore Frankenmuth is not entitled to a declaration that it owes Brown's Clearing no duty to defend or indemnify. The Defendants assert that Brown's Clearing first knew about the underlying action on July 19, 2019, when Kelley Brown received the email from Andrew Horowitz. The Defendants also assert that Brown's Clearing provided Frankenmuth written notice of the underlying action "as soon as practicable" as required by the Policy because it notified Frankenmuth seven days after Brown's Clearing first learned about it. Frankenmuth asserts that Brown's Clearing knew about the accident in February 2019 and the underlying action in May 2019, and that in either case, Brown's Clearing did not comply with the Policy's requirement to notify Frankenmuth "as soon as practicable" because Brown's Clearing did not report the

11

claim until July 2019.  Frankenmuth also contends that Brown's Clearing failed to give "written notice" and failed to forward the "summons and legal papers" to Frankenmuth. Finally, Frankenmuth argues that the Defendants' motion for summary judgment does not address the umbrella section of the Policy.

"Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  The parties agree that Alabama law governs interpretation of the Policy because Frankenmuth issued the Policy in Alabama. *See Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d 598, 599 (Ala. 1990).  Under Alabama law, where notice is a "condition precedent to any action against the insurer," an insured's failure to give timely notice of a potential claim "will release the insurer from obligations to the named insured." *Royal Indem. Co. v. Pearson*, 246 So. 2d 652, 661 (Ala. 1971).  "When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *State Farm Mut. Auto Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009) (per curiam) (citation omitted).  "If a word or phrase is not defined in [an insurance] policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 700 (Ala. 2012) (per curiam) (alteration in original) (citation omitted).  "[I]f a provision in an insurance policy is found to be genuinely ambiguous, 'policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.'" *Id.* (citation omitted).  "The issue whether

12

a contract is ambiguous or unambiguous is a question of law for a court to decide." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999).

Condition 2.a. of the Policy's general liability coverage requires the insured to "see to it that [Frankenmuth] is notified as soon as practicable of an 'occurrence' . . . which may result in a claim." (Doc. 1-2 at 25). Likewise, condition 2.b. requires the insured to "see to it that [Frankenmuth] receive[s] written notice of the claim or 'suit' as soon as practicable." (*Id.*). Subsection 4 of the Commercial Liability Plus endorsement states that "[t]he requirement in condition 2.a. that you must see to it that we receive notice of an 'occurrence' applies only when an 'occurrence' is *known* to . . . [a]n executive officer or insurance manager, if you are a corporation." (*Id.* at 48) (emphasis added). Likewise, the endorsement states that "[t]he requirement in condition 2.b. . . . will not be considered breached unless the breach occurs after such claim or 'suit' is *known* to . . . [a]n executive officer or insurance manager, if you are a corporation." (*Id.*) (emphasis added). It is undisputed that Kelley Brown and Steven Brown are Brown's Clearing's only "executive officers."

### 1. When the Occurrence, Claim, or Suit Was "Known" to Brown's Clearing

The parties disagree as to the meaning of the word "known." Brown's Clearing contends that "known" means "actually known," such that Brown's Clearing's duty to notify Frankenmuth of an occurrence, claim, or suit was not triggered until an executive officer of Brown's Clearing had actual knowledge of the occurrence, claim, or suit.

13

Frankenmuth argues that "known" means "generally recognized," citing the Merriam Webster online dictionary.

Because the Policy does not define the word "known," the Court will construe the word "according to the meaning a person of ordinary intelligence would reasonably give it." *See Travelers Cas. & Sur. Co.*, 117 So. 3d at 700 (citation omitted).  In drafting this Policy, Frankenmuth chose the word "known" without any qualifying language. Frankenmuth could have used the phrase "should have known" or "had reason to know," but it did not.  Thus, the Court declines to adopt Frankenmuth's expansive interpretation of "known" because it is not the meaning a person of ordinary intelligence would reasonably give it.  Instead, such a person would reasonably understand "known" to mean "actually known."  Thus, the Court will construe "known" to mean "actually known." *See id.*  Alternatively, to the extent that the word "known" is ambiguous, the Court would construe it to mean "actually known" in accordance with the directive to construe the policy "liberally in respect to persons insured and strictly with respect to the insurer." *See id.* (citation omitted).  Accordingly, Brown's Clearing's duty to notify Frankenmuth of an occurrence, claim, or suit was not triggered until an executive officer of Brown's Clearing—Kelley or Steven Brown—had actual knowledge of the occurrence, claim, or suit.

Mrs. Brown testified that she first knew about the underlying action on July 19, 2019, when she received an email from Andrew Horowitz.  In its response to the Defendants' motion for summary judgment, Frankenmuth disputes this fact and argues that the accident was "known" to Brown's Clearing in February 2019, thereby triggering

Brown's Clearing's duty to notify Frankenmuth.  In support, Frankenmuth points to two pieces of evidence: (1) the February 2019 email exchange between Horowitz and Mrs. Brown, and (2) a Certificate of Liability Insurance for Brown's Clearing's subcontractor S&S Diesel dated February 13, 2019.  Frankenmuth principally argues that this evidence demonstrates that Brown's Clearing "generally recognized" a potential claim against it in February 2019. (*See* Doc. 56 at 19).  This argument is unavailing because, as explained earlier, the Court rejects Frankenmuth's position that "known" means "generally recognized."  To the extent that Frankenmuth argues that this evidence demonstrates that an occurrence, claim, or suit was "known" to Brown's Clearing in February 2019, in the sense that Brown's Clearing had actual knowledge, the Court now addresses such an argument.

Viewing the evidence in the light most favorable to Frankenmuth and drawing all reasonable inferences in its favor, no reasonable jury could conclude that the email exchange demonstrates that Brown's Clearing had actual knowledge of the accident in February 2019.  Mrs. Brown testified that she thought Horowitz was seeking a potential witness when he emailed her in February 2019, and that she first learned of the underlying action in July 2019.  None of Horowitz's February 2019 emails describe the details of the "suit . . . filed by the motorist."  None of the emails state that Mrs. Ford's car was struck by a tree limb or that tree cutting work was the cause of the accident.  None of the emails state that Brown's Clearing was a potential defendant.  In opposing summary judgment, once the movant has met its initial burden under Fed. R. Civ. P. 56(c), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  These emails may show some metaphysical doubt as to Brown's Clearing's knowledge in February 2019, but nothing more.  This is insufficient to create a genuine dispute of material fact.

The Court similarly concludes that no reasonable jury could conclude that the Certificate of Liability Insurance demonstrates that Brown's Clearing had actual knowledge of the accident in February 2019.  Frankenmuth asserts that on February 13, 2019, Brown's Clearing, "clearly 'generally recognizing' a possible liability on its part," (doc. 56 at 19), requested and received a Certificate of Liability Insurance ("Certificate") for its subcontractor, S&S Diesel.  In support, Frankenmuth points to a Certificate dated February 13, 2019, which indicates that S&S Diesel was covered by a commercial general liability policy from August 6, 2018, through January 1, 2019. (Doc. 54-2).  Brown's Clearing disputes that it requested the Certificate on February 13 and contends that it requested the Certificate on July 26, 2019 (the day it notified Frankenmuth of the claim).  In support, Brown's Clearing cites an email dated July 26, 2019, from the insurance company to Brown's Clearing with the Certificate attached. (Doc. 59-1 at 2–3).  Brown's Clearing further contends that S&S Diesel's liability policy renews each year on February 13; thus, the February 13, 2019 date on the Certificate indicates when the policy renewed, not when Brown's Clearing requested it.  In support, Brown's Clearing cites a Certificate for S&S Diesel bearing the date February 13, 2020, and an envelope postmarked February 14, 2020. (*Id.* at 4–5).  As with the emails, this evidence cited by Frankenmuth does nothing more than create some metaphysical doubt as to Brown's Clearing's knowledge in February 2019, and this is insufficient to create a genuine dispute of material fact.

16

Additionally, in both its own motion for summary judgment and its response in opposition to the Defendants' motion, Frankenmuth argues that Brown's Clearing knew about the underlying action in May 2019 because Brown's Clearing's registered agent knew about it, based on the attempted service. Frankenmuth further argues that Brown's Clearing's failure to open several emails from its registered agent does not excuse its failure to immediately notify Frankenmuth about the lawsuit.

Even if the Court determined that Brown's Clearing's failure to timely open its emails was negligent, such a determination would not answer the question of when an executive officer of Brown's Clearing had actual knowledge of the lawsuit, which is when Brown's Clearing's duty to notify Frankenmuth is triggered under the Policy. The Policy does not state that the registered agent's actual knowledge may be imputed to an executive officer. Thus, the Policy language does not support Frankenmuth's position. Additionally, although cases express the proposition that an agent's knowledge may bind the principal because the principal is considered to have constructive notice through the agent's actual notice, *see, e.g.*, *Sullivan v. Alabama Power Co.*, 20 So. 2d 224, 270 (Ala. 1944), these authorities are inapposite because the Policy requires that the executive officer (principal) have *actual* knowledge. Constructive knowledge is not sufficient. In sum, the registered agent's knowledge in May 2019 does not equate to an executive officer's actual knowledge. To conclude otherwise, the Court would have to rewrite the Policy, which the Court may not do.

Even if the Court were to construe the Policy as Frankenmuth urges, such that the registered agent's actual knowledge could be imputed to an executive officer, the Georgia

court found that the service on the registered agent was "without effect." (Doc. 35 at 2). No reasonable jury could conclude that the attempted—but ineffective—service on the registered agent made the suit or claim "known" to Brown's Clearing. Thus, under these facts, the registered agent's knowledge cannot be imputed to an executive officer.

Frankenmuth identifies no other evidence demonstrating that Kelley or Steven Brown had actual knowledge of the underlying action prior to July 19, 2019. Thus, with respect to its motion for summary judgment, Frankenmuth has failed to meet its initial burden under Rule 56(c) to show that Brown's Clearing undisputedly knew about the claim in May 2019. Moreover, with respect to its opposition to the Defendants' motion for summary judgment, Frankenmuth has failed to meet its burden to show that a genuine dispute exists about whether Brown's Clearing first learned about the suit in July 2019. Thus, the Defendants have demonstrated as a matter of law that the suit was first "known" to Brown's Clearing on July 19, 2019. Accordingly, the Court concludes that the event triggering Brown's Clearing's duty to notify Frankenmuth was the July 19, 2019 email from Horowitz to Mrs. Brown.

Having determined that the event triggering Brown's Clearing's duty to notify Frankenmuth was the July 19, 2019 email, the Court must now determine whether Brown's Clearing satisfied its obligations to forward legal papers to Frankenmuth and to provide "written notice" to Frankenmuth "as soon as practicable."

## 2. Written Notice and Forwarding Legal Papers

In opposition to the Defendants' motion for summary judgment, Frankenmuth argues that Brown's Clearing never provided "written notice" of the claim. The Policy

does not define "written" or "written notice."  Mrs. Brown testified that she filed the claim online, and Frankenmuth does not argue that filing the claim online fails to constitute provision of "written notice."  Thus, the Defendants have met their initial burden of demonstrating that there is no genuine dispute as to whether Brown's Clearing provided written notice. *See Hornsby-Culpepper*, 906 F.3d at 1311.  In opposition, Frankenmuth cites Mr. Eichhorn's affidavit, which states that on July 26, 2019, Mrs. Brown reported a claim to Frankenmuth regarding the underlying action. (Doc. 54-7 at 2, para. 3).  But the Affidavit does not state that Mrs. Brown's report was not in writing, nor does it state the form of the report.  Frankenmuth's evidence does not rebut the Defendants' showing that there is no genuine dispute as to whether Brown's Clearing provided written notice.  Thus, Frankenmuth has failed to create a genuine dispute of material fact regarding whether Brown's Clearing provided "written notice" as required by the Policy.

In opposition to the Defendants' motion for summary judgment, Frankenmuth also argues that Brown's Clearing failed to comply with the Policy's requirement to "[i]mmediately" send Frankenmuth copies of "summonses or legal papers received in connection with the claim or 'suit.'"  The "summons or legal papers" to which Frankenmuth refers are the summons and complaint that a process server attempted to serve on Brown's Clearing's Georgia registered agent in May 2019. (*See generally* Doc. 56).  As discussed earlier, this attempted service was "without effect."  Thus, the summons and complaint were not "received" by Brown's Clearing in May 2019.  Frankenmuth identifies no other time when Brown's Clearing allegedly received the summons and complaint, nor

does Frankenmuth identify any other "legal papers" Brown's Clearing allegedly received but failed to send to Frankenmuth.  Accordingly, Frankenmuth's argument is unavailing.

### 3. As Soon As Practicable

In both its own motion for summary judgment and its response in opposition to the Defendants' motion, Frankenmuth argues that Brown's Clearing failed to notify Frankenmuth of the underlying action "as soon as practicable."  "In an insurance policy, a requirement that notice of a potential claim must be given 'as soon as practicable' generally means notice must be given within a reasonable time." *Pinson Truck Equip. Co. v. Gulf Am. Fire & Cas. Co.*, 388 So. 2d 955, 956 (Ala. 1980).  "The factors to be considered in determining the reasonableness of the delay in giving notice to the insurer are the length of the delay and the reasons for the delay." *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983).  "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury." *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976).  However, Alabama courts have found that certain delays are unreasonable as a matter of law, *see, e.g.*, *Pharr*, 429 So. 2d at 1019–20 (finding eight-month delay unreasonable where the insured provided no excuse for the delay), and have also found that certain delays are reasonable as a matter of law, *see, e.g.*, *CIE Serv. Corp. v. Smith*, 460 So. 2d 1244, 1247 (Ala. 1984) (per curiam) (finding one-year delay reasonable "[u]nder the facts of this case" where insured's excuse was uncertainty about whether criminal acts of third party gave rise to claim against insured (emphasis omitted)).

Importantly, the Alabama Supreme Court has held that an insured's two-week delay in notifying the insurer of a claim was reasonable as a matter of law and satisfied the policy's requirement to notify "as soon as practicable," where the insured provided no reason for the delay. *See Pinson*, 388 So. 2d at 957 (reversing trial court's entry of directed verdict in favor of insurance company).  Here, Brown's Clearing notified Frankenmuth about the claim seven days after Brown's Clearing first became aware of it.  Additionally, Frankenmuth makes no argument that the seven-day delay was unreasonable.  In light of *Pinson*, the Court finds that Brown's Clearing's seven-day "delay" in notifying Frankenmuth was reasonable as a matter of law and satisfied the Policy's requirement to notify Frankenmuth "as soon as practicable."

### 4. Umbrella Coverage

In opposition to the Defendants' motion for summary judgment, Frankenmuth contends that because the umbrella coverage provision does not contain the same endorsement as the general liability coverage provision, Brown's Clearing's argument that it did not breach the Policy's conditions until the suit was "known" to an executive officer "does not apply to the umbrella section." (Doc. 56 at 27).  Frankenmuth then argues that "Brown's Clearing never provided written notice of any lawsuit to [Frankenmuth]," and that Brown's Clearing's motion for summary judgment fails as to the umbrella provision. (*Id.*).  The Court is not persuaded.  Even absent a requirement that the lawsuit be "known" to an executive officer in order to trigger the duty to notify Frankenmuth, the Defendants' evidence—that Mrs. Brown reported the lawsuit to Frankenmuth seven days after she says she first learned about it—satisfies their initial burden under Rule 56(c) to show that

Brown's Clearing notified Frankenmuth about the underlying action "as soon as practicable" as required by the umbrella provision.  Frankenmuth's only response to the Defendants' evidence is that Brown's Clearing "never provided written notice of any lawsuit."  But as explained earlier, there is no genuine dispute as to the fact that Brown's Clearing *did* provide written notice.  Thus, the Court concludes that, as a matter of law, Brown's Clearing complied with the umbrella policy's requirements to provide Frankenmuth with written notice of the suit "as soon as practicable."  Accordingly, the Court finds that the Defendants are entitled to judgment as a matter of law as to Count I of the Plaintiff's Complaint.

## B. Count II

The Court next addresses the Defendants' argument that economic loss is covered by the Policy.  Although Frankenmuth does not "oppos[e] a finding that in this case economic damages qualify as damages under the policy," (doc. 56 at 9, n.4), the Court "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion," *United States v. One Piece of Real Property Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

Under the Policy, Frankenmuth must "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (Doc. 1-2 at 14).  The Policy defines "bodily injury" to mean, in relevant part, "bodily injury, sickness, or disease sustained by a person." (*Id.* at 27).  There is no genuine dispute that Mrs. Ford claims she suffered a "bodily injury" in the form of injuries to her left wrist resulting in Complex Regional Pain Syndrome.  In her amended complaint in the

underlying action, Mrs. Ford seeks "damages for her injuries, pain and suffering, . . . and loss of earnings, past, present and future." (Doc. 1-1 at 9).  The question thus is whether economic damages such as lost earnings are sums that Brown's Clearing would be legally obligated to pay as damages because of Mrs. Ford's alleged bodily injury.

Georgia[4] recognizes two broad categories of compensatory damages: general damages and special damages. Ga. Code Ann. § 51-12-2.  General damages are "those which the law presumes to flow from any tortious act," *id.* § 51-12-2(a), and include damages for pain and suffering and loss of the ability to labor, *see Hunt v. Williams*, 122 S.E.2d 149, 154 (Ga. Ct. App. 1961) (explaining that loss of ability to labor is an element of pain and suffering).  Special damages are "those which actually flow from a tortious act," Ga. Code Ann. § 51-12-2(b), and include lost earnings and lost or diminished future earning capacity, *see Atl. Coast Line R.R. Co. v. McDonald*, 119 S.E.2d 356, 360 (Ga. Ct. App. 1961) (explaining that lost earnings are available as special damages); *Jones v. O'Day*, 692 S.E.2d 774, 776–77 (Ga. Ct. App. 2010) ("Recovery for lost earning capacity is an item of special damages . . . ." (citation omitted)).  Thus, Brown's Clearing would be legally obligated to pay as damages the economic losses claimed by Mrs. Ford. Accordingly, the Court concludes that such economic losses are covered by the Policy, and the Defendants are entitled to judgment as a matter of law as to Count II of the Plaintiff's Complaint.

---

[4] Although Alabama law governs questions concerning the interpretation of the Policy, the question of what sums Brown's Clearing would be legally obligated to pay is governed by Georgia law since the underlying action is in Georgia state court regarding an accident that occurred in Georgia.

## VI. CONCLUSION

For the reasons stated, it is hereby ORDERED as follows:

1. Frankenmuth's motion for summary judgment (doc. 52) is DENIED;

2. The Defendants' motion for summary judgment (doc. 26) is GRANTED, and judgment is entered in favor of the Defendants and against the Plaintiff on Counts I and II of the Plaintiff's Complaint.

A separate Final Judgment will enter.

Done this 4th day of January, 2022.

_____/s/Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE